## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LARA PEARSALL-DINEEN, individually and on behalf of all similarly situated individuals, <br><br>         Plaintiff, <br> vs. <br><br> FREEDOM MORTGAGE CORPORATION, <br><br>         Defendant. | Civil Action No. 13-6836(JEI)(JS) <br><br> **VIA E-FILE** <br><br><br> Return date: May 19, 2014 <br><br> **ORAL ARGUMENT REQUESTED** |

---

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
## MOTION FOR CONDITIONAL CERTIFICATION AND TO SEND NOTICE

---

**KLUGER HEALEY, LLC**
219 Broad Street
Red Bank, NJ 07701
T: (732)852-7500
F: (888)635-1653
Attorneys for Defendant


On the Brief:
     Phillip G. Ray, Esq.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................ii

PRELIMINARY STATEMENT .................................................................................1

PROCEDURAL HISTORY AND FACTUAL BACKGROUND .............................3

    A. Procedural History .....................................................................................3

    B. FMC's Payroll and Time Keeping Policies .............................................4

    C. Plaintiffs and the Putative Class .............................................................6

LEGAL ARGUMENT.............................................................................................9

    BECAUSE PLAINTIFFS CANNOT ESTABLISH THE
    REQUIREMENTS FOR CONDITIONAL CERTIFICATION,
    THEIR REQUEST FOR AUTHORIZATION TO SEND NOTICE
    TO POTENTIAL CLASS MEMBERS SHOULD BE DENIED ...................9

    A.    Plaintiffs Are Unable To Demonstrate That Plaintiffs Are
         Similarly Situated To Other Employees ............................................9

         1.    Plaintiffs' Individualized Claims And Defenses Of
              Their "Off-The-Clock" Claim, Which Is Not
              Conducive To A Representative Action, Justify A
              Denial Of Their Motion For Conditional
              Certification ................................................................11

         2.    Plaintiffs Cannot Demonstrate That FMC Has A
              Common Plan, Practice Or Policy In Violation Of
              The FLSA.....................................................................13

    B.    Plaintiffs' Declarations Confirm That They Do Not Have
         Personal Knowledge As To Whether Other Individuals Are
         Entitled To Unpaid Overtime............................................................18

    C.    Plaintiffs' Proffer Of Case Law Purportedly Supporting
         Their Motion Is Unavailing ...............................................................19

CONCLUSION........................................................................................................22

i

**TABLE OF AUTHORITIES**

**Page**

**CASES**

Aboud v. City of Wildwood,
  2013 WL 2156248 (D.N.J. May 17, 2013) .............................................................. 19
Armstrong v. Weichert Realtors,
  No. 05-3120, 2006 U.S. Dist. LEXIS 31351 (D.N.J. May 19, 2006) ........................... 14,15,18
Baum v. Shoney's,
  No. 98-423, 1998 U.S. Dist. LEXIS 21484 (M.D. Fla. Dec. 3, 1998) ....................... 13
Bernard v. Household International, Inc.,
  231 F. Supp. 2d 433 (E.D. Va. 2002) ................................................................. 13,21
Brothers v. Portage Nat'l Bank,
  No. 05-94, 2009 U.S. Dist. LEXIS 109769 (W.D. Pa. Mar. 24, 2009) .................... 12
Camper v. Home Quality Mgmt. Inc.,
  200 F.R.D. 516 (D. Md. 2000) ............................................................................ 9
D'Anna v. M/A-Com, Inc.,
  903 F. Supp. 889 (D. Md. 1995) ........................................................................ 11,21
Diaz v. Electronics Boutique of America, Inc.,
  No. 04-0840E, 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. October 13, 2005) .......... 11
Dreyer v. Altchem Environmental Services, Inc.,
  No. 06-2393, 2007 U.S. Dist. LEXIS 71048 (D.N.J. Sept. 25, 2007) ...................... 10
England v. New Century Financial Corp.,
  370 F. Supp. 2d 504 (M.D. La. 2005) ................................................................. 16
Freeman v. Wal-Mart,
  256 F. Supp. 2d 941 (W.D. Ark. 2003) ............................................................... 11,13
Garcia v. Freedom Mortgage Corp.,
  2009 WL 3754070 (D.N.J. Nov. 2, 2009) ........................................................... 19
Hall v. Burk,
  No. 01-2487, 2002 U.S. Dist. LEXIS 4163 (N.D. Tex. Mar. 12, 2002) .................. 9
Harper v. Lovett's Buffett, Inc.,
  185 F.R.D. 358 (M.D. Ala. 1999) ........................................................................ 9
Haynes v. Singer Co., Inc.,
  696 F.2d 884 (11th Cir. 1983) ......................................................................... 21
Hoffman-La Roche Inc.  v. Sperling,
  493 U.S. 165 (1989) ......................................................................................... 9,15
Kronick v. bebe Stores, Inc.,
  No. 07-4514, 2008 U.S. Dist. LEXIS 78502 (D.N.J. October 2, 2008) .................. 14,18
Lusardi v. Xerox Corp.,
  118 F.R.D. 351 (D.N.J. 1987) ............................................................................ 10
Manning v. Goldbelt Falcon, LLC,
  2010 WL 3906735 (D.N.J. Sept. 29, 2010) ........................................................ 19
Manzi v. Harman & Tyner, Inc.,
  No. 11-60426, 2011 U.S. Dist. LEXIS 73562 (S.D. Fla. July 8, 2011) .................. 17

**Page**

McElmurry v. US Bank National Association,
 No. 04-642, 2004 U.S. Dist. LEXIS 15233 (D. Or. Jul. 27, 2004)........................................... 13

Mike v. Safeco, Inc.,
 274 F. Supp. 2d 216 (D. Conn. 2003) .................................................................................... 13

Morisky v. Pub. Serv. Elec. & Gas Co.,
 111 F. Supp. 2d 493 (D.N.J. 2000) ................................................................................ 9,10,11,21

Rogers v. Ocean Cable Group, Inc.,
 No. 10-4198, 2011 U.S. Dist. LEXIS 149197 (D.N.J. December 29, 2011)................. 15,18,19

Ruehl v. Viacom, Inc.,
 500 F. 3d 375 (3d Cir. 2007)......................................................................................... 9

Severtson v. Phillips Beverage Co.,
 137 F.R.D. 264 (D. Minn. 1991)..................................................................................... 13

Shakib v. Back Bay Rest. Group, Inc.,
 2011 WL 5082106 (D.N.J. Oct. 26, 2011)............................................................... 19

Smith v. Sovereign Bancorp, Inc.,
 No. 03-2420, U.S. Dist. LEXIS 21010 (E.D. Pa. Nov. 13, 2003) ......................... 10

Steele v. Depuy Orthopaedics, Inc.,
 295 F. Supp. 2d 439 (D.N.J. 2003) ......................................................................... 17

West v. Border Foods, Inc.,
 No. 05-2525, 2006 U.S. Dist. LEXIS 46506 (D. Minn. June 12, 2006),
 *adopted by*, 2006 U.S. Dist. LEXIS 46506 (D. Minn., July 10, 2006) .................. 12

White v. Osmose, Inc.,
 204 F. Supp. 2d 1309 (M.D. Ala. 2002) ................................................................. 9

White v. Rick Bus Co.,
 743 F. Supp. 2d 380 (D.N.J. 2010) .......................................................................... 10

Williams v. Accredited Home Lenders,
 No. 05-1681, 2006 U.S. Dist. LEXIS 50653 (N.D. Ga. July 25, 2006) .................... 16

**STATUTES AND RULES**

29 U.S.C. §216(b) ................................................................................................................ 9
L. Civ. R. 7.2(a) ...................................................................................................................18

## PRELIMINARY STATEMENT

Plaintiff Lara Pearsall-Dineen ("Dineen") filed this lawsuit against her former employer, Defendant Freedom Mortgage Corporation ("FMC") claiming that FMC failed to pay her and all similarly situated underwriters for all hours they worked in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). Specifically, Plaintiffs claim that FMC required them to work "off-the-clock" and that FMC altered their time records to reduce their actual hours worked in order to avoid paying them overtime. Plaintiffs assert that this case should be conditionally certified as a collective action under the FLSA.

This case, however, is not properly a collective action. Indeed, granting this case collective treatment would turn the fundamental purpose of the collective action device — judicial efficiency — on its head. "Off-the-clock" claims that are not the result of a uniformly applied company policy *(e.g.,* donning and doffing claims) are simply not properly subject to collective treatment. The rationale is clear. Where, as here, the employer at issue has unequivocal policies that prohibit unauthorized overtime, working "off-the-clock" or not being paid for all hours worked, the viability of an "off-the-clock" claim necessarily turns on individual facts and circumstances. In such instances, "off-the-clock" claims, such as those alleged here, are primarily a function of the employee's own behavior (ignoring company policies). However, the individual claimants herein are not similarly situated. Each claimant will have to testify regarding who allegedly instructed him or her to work "off-the-clock" and/or to underreport their work hours, and as to when, how often and for how many hours per week this occurred. In addition, each claimant will have to explain why he or she did not record the hours that he or she in fact worked. The reasons underlying each individual's response, and correspondingly FMC's defense, will necessarily be individualized, rendering any assertion that the claimants are

similarly situated as fatally flawed. This undeniable fact highlights the individualized nature of each potential litigant's claim and underscores the need for separate hearings and determinations.

Certifying this case, conditionally or otherwise, will require this Court to engage in potentially hundreds of individualized inquiries regarding each putative class member's work habits, practices and directives to determine whether anyone is entitled to additional compensation from FMC. This type of individualized inquiry does not lend itself to collective treatment. Accordingly, FMC opposes Plaintiffs' Motion for Conditional Certification and to Facilitate Notice, pursuant to 29 U.S.C. §216(b).

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

**A.      Procedural History**

On November 12, 2013, Dineen, on behalf of herself and all other similarly situated individuals, filed the Complaint against FMC, asserting that she was not compensated for all overtime pay to which she was entitled, in violation of the FLSA. [PGR Decl., ¶2].[1] On December 23, 2013, FMC filed its Answer. Id.

In addition to Dineen, 21 individuals have joined the instant action. [PGR Decl., ¶3]. Subsequently, three individuals, without explanation, withdrew from the instant action. Id. As a result, including Dineen, there are 19 individuals that are currently members of this action (collectively, the "Plaintiffs"): Richard Carey, Faye Glaspie Bradley, Joy Ewert, Francine Herman, DeAndre Jones, Cindy Kellner, Deborah Malvey, Denise Marquez, Shaun McDonald, Sharon McLane, Patrice Meilunas, Venda Muller, Rebecca Packer, Linda Payne, Lara Pearsall-Dineen, Ruth Razon-Nguyen, Amy Spitzer, Gail Stone, and William Wolin.[2] Id.

By Order dated February 5, 2014, discovery between the Parties has been limited to Rule 26 Initial Disclosures and written discovery requests. [PGR Decl., ¶4]. The Parties were not permitted to notice any depositions. Id. Both Parties served written discovery requests. Id.

FMC served written discovery requests on all 20 individuals who were members of the lawsuit at the time. [PGR Decl., ¶5]. Prior to responding to the discovery requests, three of the individuals, who were served with FMC's discovery requests, withdrew from the action. Id.

---

[1]      "PGR Decl." refers to the Declaration of Phillip G. Ray, dated May 5, 2014, and submitted herewith.

[2]      In their moving brief, Plaintiffs incorrectly state that there is one lead plaintiff and 16 opt-in plaintiffs. [Pl. Br. at p. 3]. Because Plaintiffs did not identify all of the individuals that they understand to be Plaintiffs, it is unknown who they are forgetting.

Plaintiffs' responses to FMC's discovery responses were due on March 21, 2014. Id. To date, FMC is still owed discovery responses from nine of the Plaintiffs. Id.

In response to Plaintiffs' discovery requests, FMC provided Plaintiffs with all of their time and pay data. [PGR Decl., ¶6]. Included in FMC's discovery responses were E-Time Audit Reports for all Plaintiffs, which provide all the time entry and editing information of the Plaintiffs' work hours. [PGR Decl., ¶6, DA Decl., ¶6].[3]

## B.   FMC's Payroll and Time Keeping Policies

In 2010, FMC changed its compensation scheme with its underwriters. [KJ Decl., ¶2].[4] Prior to that time, FMC did not pay its underwriters any overtime compensation. Id. Rather, as FMC considered the underwriters to be exempt, the underwriters were paid a salary for all hours worked. Id.

However, in or about June 2010, FMC, although still classifying the underwriters as exempt, began requiring the underwriters to record their work hours and paying them overtime compensation for any workweek in which an underwriter worked more than 40 hours. Id. FMC has continued that practice to the present. Id. Thus, underwriters are paid on a salary basis in accordance with the FLSA, and receive time and a half their regular rate of pay for any hours that they work after 40 in a workweek. Id. at ¶¶2 and 8. There are even times that FMC pays underwriters double time. [DA Decl., ¶4].

With respect to their work hours, underwriters are advised that FMC only wants them to work eight hours each day, Monday through Friday, for a total of 40 hours in each workweek. [KJ Decl., ¶9; DB Decl., ¶11]. If an underwriter needs more than eight hours in a day to

---

[3]       "DA Decl." refers to the Declaration of Dayla Ammend, dated May 2, 2014, and submitted herewith.

[4]       "KJ Decl." refers to the Declaration of Karen Jefferson, dated April 30, 2014, and submitted herewith.

complete an assignment, then he or she is expected to get pre-approval from his or her manager to work overtime. Id. Instead of approving overtime, the supervisor may alternatively have the underwriter stop working early to avoid having him or her work overtime. [CP Decl., ¶¶3-4].[5] In sum, FMC wants its underwriters to be conscious of their time and get pre-approval for any overtime work. [KJ Decl., ¶10]. An exception to this policy is when, due to a high volume of work, FMC seeks out underwriters to volunteer for overtime work. Id. at ¶11.

Initially, in order to keep track of the underwriters' time, FMC had the underwriters use timesheets. Id. at ¶3. The underwriters were responsible to enter their own work hours on the timesheets. Id. At the end of the week, the underwriters would confirm the accuracy of their self-reported work hours on the timesheets by signing them. Id. Thereafter, the underwriters' supervisors would sign them and forward them to payroll for processing. Id.

In 2013, FMC transitioned its underwriters from the manual timesheets to a software program called ADP E-Time. Id. at ¶4. With ADP E-Time, underwriters "punch" in or out by logging onto the ADP website. [DB Decl., ¶3]. Underwriters only have the ability to make a "punch;" they cannot edit the time of the "punch" or add a "punch" when they forget to do so in the first place. [DA Decl., ¶7]. Any edits to underwriters' timecards are performed by their supervisors or certain approved payroll staff. Id. At the end of each payroll period, underwriters are required to "approve" the timecard before it can be processed by payroll. [KJ Decl., ¶6].

FMC relies on its underwriters to be truthful and accurate about their reported work hours because many of its underwriters work remotely. [KJ Decl., ¶7]. Underwriters are

---

[5]    "CP Decl." refers to the Declaration of Cindy Pearce, dated April 30, 2014, and submitted herewith.

consistently advised that it is FMC's policy that they record all hours worked and not to work "off-the-clock." [KJ Decl., ¶10; PA Decl., ¶9; CL Decl., ¶9; DB Decl., ¶5].[6]

## C.   Plaintiffs and the Putative Class

Plaintiffs are all former underwriters for FMC. [DA Decl., ¶3]. Plaintiffs seek to represent all present and former underwriters of FMC going back three years from when notice is granted. [RID Decl., Exh. C].[7] If Plaintiffs' motion is granted, there is a potential of more than 300 individuals joining this lawsuit. [PGR Decl., ¶7].

Plaintiffs claim they were not paid for all the overtime that they are owed. [Pl. Br., p. 4]. However, all Plaintiffs (except for Linda Payne) reported and were compensated for overtime. [DA Decl., ¶4]. In addition, several Plaintiffs reported and were compensated for substantial amounts of overtime, some of which was compensated as double time. [DA Decl., ¶4].

Dineen inexplicably had difficulty with her time entry. [DB Decl., ¶¶10-13; CP Decl., ¶¶2-7; DA Decl., Exh. A]. Out of 118 days that Dineen used ADP E-time, 57 days required editing to fix a missed "punch" or an errant "punch." [DA Decl., Exh. A]. For example, on April 4, 2013, Dineen did a double punch at 3:01 PM and 3:02 PM and did another "punch" at 3:19 PM.  [DA Decl., Exh. A]. As a result, her supervisor, Darryl Bradshaw ("Bradshaw"), had to correct the mistake by removing the double punch, thereby leaving her clock out time as 3:19 PM. Id. On April 26, 2013, Dineen made an errant "punch" at 10:13 AM that Bradshaw changed to 5:45 AM. Id. On April 10, 2013, Bradshaw had to add a 7:00 PM "punch" out (resulting in a 10-hour workday for Dineen) because Dineen apparently forgot to "punch" out. Id.

---

[6]    "PA Decl." refers to the Declaration of Pamela Allen, dated April 29, 2014, and submitted herewith. "CL Decl." refers to the Declaration of Cyndie Lanier, dated May 2, 2014, and submitted herewith. "DB Decl." refers to the Declaration of Darryl Bradshaw, dated April 29, 2014, and submitted herewith.

[7]    "RID Decl." refers to the Declaration of Reena I. Desai, dated April 1, 2014, and submitted with Plaintiffs' moving papers.

However, Dineen admittedly understood FMC's policies regarding time reporting and working hours. [DB Decl., ¶11]. As detailed in an email string dated March 21, 2013, between Bradshaw and Dineen, Bradshaw addressed several concerns that he had with Dineen's work hours. Id. First, Bradshaw explained that "off-the-clock" work was unacceptable. Id. In response, Dineen stated that it only happened one time. Id. Second, Bradshaw explained that Dineen needed pre-approval to work more than eight hours in a day. Id. In response, Dineen stated that she understood the policy and reassured Bradshaw that she was not working overtime. Id. Third, Bradshaw explained that Dineen must take a lunch on any day that she was scheduled to work at least five hours. Id. In response, Dineen acknowledged that she understood the policy. Id. Fourth, Bradshaw explained to her that FMC expected Dineen to work a set of standard hours, and that she could not simply work when she wanted to work. Id.

Similarly, in an email dated April 19, 2013, while addressing Dineen's missing work hours, Bradshaw again reiterated FMC's policy for no "off-the-clock" work and, in response, Dineen confirmed that she "did not work off the clock at all." Id. at ¶13. Bradshaw also reminded Dineen it was important to "adhere to the time keeping policies, as [Dineen was] a remote employee there is no other means for the time to be recorded than [her] communication [with Bradshaw]." Id.

Dineen was not the only employee who had issues with recording her time. [DB Decl., ¶9; DA Decl., Exhs. B and C]. In addition to Dineen, Plaintiffs Faye Glaspie Bradley and William Wolin often had to have their timecards edited because of an errant or missed "punch." [DB Decl., ¶9; DA Decl., Exhs. B and C]. Out of 45 days that Bradley entered her time on ADP E-Time, 22 days required editing. [DA Decl., Exh. B]. Out of 49 days that Wolin entered his time on ADP E-Time, only six days did not need any edits. [DA Decl., Exh. C].

On the other hand, several Plaintiffs apparently had no trouble recording their time using ADP E-Time. [DA Decl., Exhs. E through I]. Indeed, the timecards of Cindy Kellner (four days out of 127 required editing), Gail Stone (16 days out of 62 required editing), Denise Marquez (four days out of 74 required editing), Ruth Razon-Nguyen (20 days out of 156 required editing), and Francine Herman (12 days out of 60 required editing) needed little editing. Id.

**LEGAL ARGUMENT**

**BECAUSE PLAINTIFFS CANNOT ESTABLISH THE REQUIREMENTS FOR CONDITIONAL CERTIFICATION, THEIR REQUEST FOR AUTHORIZATION TO SEND NOTICE TO POTENTIAL CLASS MEMBERS SHOULD BE DENIED**

Although the Supreme Court has determined that district courts have the discretionary power to authorize the sending of notice to potential class members in a collective action, pursuant to 29 U.S.C. §216(b), such notice is "by no means mandatory." Hall v. Burk, No. 01-2487, 2002 U.S. Dist. LEXIS 4163 at *5 (N.D. Tex. Mar. 12, 2002); Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 169-170 (1989). Rather, the District Court's power to authorize notice must be "exercised with discretion and only in appropriate cases." White v. Osmose, Inc., 204 F. Supp. 2d 1309, 1312 (M.D. Ala. 2002); Camper v. Home Quality Mgmt. Inc., 200 F.R.D. 516, 519 (D. Md. 2000) ("The relevant inquiry then is not whether the Court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise discretion"). As demonstrated below, the exercise of such discretion is not appropriate in this case.

A.    **Plaintiffs Are Unable To Demonstrate That Plaintiffs Are Similarly Situated To Other Employees.**

Under the FLSA, the issuance of notice to putative members of a collective action can only be justified where the plaintiffs and putative collective action members are "similarly situated." 29 U.S.C. §216(b); Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 496 (D.N.J. 2000); see also Ruehl v. Viacom, Inc., 500 F.3d 375, 389 n.17 (3d Cir. 2007) (the court noted that the term "similarly situated" is not defined by the FLSA). Of course, "[p]laintiffs bear the burden of showing that they are similarly situated to the remainder of the proposed class." Morisky, 111 F. Supp. 2d at 496; Harper v. Lovett's Buffett, Inc., 185 F.R.D. 358, 362 (M.D. Ala. 1999) ("Plaintiffs bear the burden to establish that they and the class they wish to represent

are similarly situated"). Under the framework adopted by the District of New Jersey, the Plaintiffs must make such a "similarly situated" showing at two separate stages of a collective action litigation. Morisky, 111 F. Supp. 2d at 497; Lusardi v. Xerox Corp., 118 F.R.D. 351, 359 (D.N.J. 1987).

At the first stage, Plaintiffs must demonstrate that they and all of the other potential collective action members are sufficiently "similarly situated" to justify sending notice of the action. Morisky, 111 F. Supp. 2d at 497. At this stage, "the court usually has only minimal evidence before it — the pleadings and any affidavits submitted by the parties" and, therefore, "this determination is [usually] made using a fairly lenient standard …." Id. However, this admittedly lenient standard does not mean that Plaintiffs should automatically receive this Court's approval to send out notices. See Smith v. Sovereign Bancorp, Inc., No. 03-2420, U.S. Dist. LEXIS 21010 at *2 (E.D. Pa. Nov. 13, 2003) ("automatic preliminary class certification is at odds with the Supreme Court's recommendation to 'ascertain the contours of the [§216] action at the outset,' and such certification does not comport with the congressional intent behind FLSA's opt-in requirement, which was designed to limit the potentially enormous size of FLSA representative actions"(internal citations omitted)). On the contrary, even at this initial stage, courts in the District of New Jersey "require[] the plaintiff to show a modest factual nexus between their situation and that of the proposed class members." White v. Rick Bus Co., 743 F. Supp. 2d 380, 387 (D.N.J. 2010) (internal citations and quotations removed). "In spite of the modest [factual nexus] evidentiary standard, courts have not hesitated to deny conditional certification when evidence is lacking." Dreyer v. Altchem Environmental Services, Inc., No. 06-2393, 2007 U.S. Dist. LEXIS 71048 at *8-9 (D.N.J. Sept. 25, 2007). Such a requirement is premised on the principles of "sound case management to avoid the 'stirring up' of litigation

through unwarranted solicitation; [and because] an employer should not be unduly burdened [and prejudiced] by a frivolous fishing expedition conducted by plaintiff at the employer's expense." D'Anna v. M/A-Com, Inc., 903 F. Supp. 889, 893-894 (D. Md. 1995). Indeed, it "would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." Freeman v. Wal-Mart, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003).

At the second stage, the District Court makes another determination: "after discovery is largely complete and the case is ready for trial." Morisky, 111 F. Supp. 2d at 497. By that point, the "court has much more information on which to base its decision and, as a result, then employs a stricter standard" to determine whether the case should be "allowed to proceed to trial as a collective action." Id.

In this action, only minimal discovery has been conducted to date. Accordingly, the "first stage" standard of review applies. See id. However, even with the admittedly minimal evidentiary showing required at this stage, Plaintiffs' attempt to satisfy same falls far short. First, their claims are too individualized for collective action treatment.  Second, Plaintiffs have failed to demonstrate that there are any similarly situated victims of a common plan or policy.

> **1.** **Plaintiffs' Individualized Claims And Defenses Of Their "Off-The-Clock" Claim, Which Is Not Conducive To A Representative Action, Justify A Denial Of Their Motion For Conditional Certification.**

Collective actions are routinely denied in "off-the-clock" claims. Courts have found claims of "off-the-clock" work "too individualized to warrant collective action treatment," and that questions of fact would likely differ among class members. Diaz v. Electronics Boutique of America, Inc., No. 04-0840E, 2005 U.S. Dist. LEXIS 30382 at *1 (W.D.N.Y. Oct. 13, 2005); see

also West v. Border Foods, Inc., No. 05-2525, 2006 U.S. Dist. LEXIS 46506, at *27-29 (D. Minn. June 12, 2006) (conditional certification denied because proposed class members were employed at different store locations, were deprived of overtime pay by varying means, and claimed different numbers of unpaid hours per week. The absence of widespread violations, along with the individualized nature of those violations actually alleged, precluded a finding that conditional certification was appropriate), adopted by, 2006 U.S. Dist. LEXIS 46506 (D. Minn., July 10, 2006). Courts also have denied collective action certification where employees claim they were required to work after clocking out for the day, and held that the plaintiff had not presented legitimate evidence of a single policy or plan that "permeated" all of the employer's offices. Brothers v. Portage Nat'l Bank, No. 05-94, 2009 U.S. Dist. LEXIS 109769, at *13-18 (W.D. Pa. Mar. 24, 2009).

To litigate the instant claims, there are a vast number of *individual* issues that must be ascertained, which belie the certification of the instant action. For example, each claimant will have to testify regarding: (1) who instructed him or her to work "off-the-clock;" (2) when they worked "off-the-clock" or had their time altered inappropriately; (3) how often they worked "off-the-clock;" and (4) for how many hours per week they worked "off-the-clock" or had their time altered inappropriately. In addition, each claimant will have to explain why they did not record the hours that they in fact worked notwithstanding FMC's clear time recording policies. Moreover, each claimant will have to testify not only about their self-reported time entries (on manual timesheets and/or ADP E-Time), but also about the numerous emails (or other correspondences) to their supervisors about requested revisions to their timecards. A review of the ADP E-Time Reports reveals that Plaintiffs had highly individualized reporting habits. [DA

Decl., Exhs. A-I]. Because no common testimony will serve to answer these issues/questions as to all Plaintiffs, collective treatment of their claims is inappropriate.

In sum, because of the individualized nature of Plaintiffs' claims and FMC's defenses, this action is not suitable for collective action treatment. For this reason, as other courts have recognized in "off-the-clock" claims, Plaintiffs' instant motion for conditional certification, should be denied.

### 2.     Plaintiffs Cannot Demonstrate That FMC Has A Common Plan, Practice Or Policy In Violation Of The FLSA.

In order to authorize notice of a purported collective action, plaintiffs must provide evidence of a plan, practice or policy in violation of the FLSA. Mike v. Safeco, Inc., 274 F. Supp. 2d 216, 220 (D. Conn. 2003) (requiring a "factual showing" that the named plaintiffs and the putative class "together were victims of a common, policy or plan that violated the law"); Bernard v. Household International, Inc., 231 F. Supp. 2d 433, 435 (E.D. Va. 2002) (requiring "factual evidence" that the defendant "has a company-wide policy resulting in potential FLSA violations" in order to justify notice); Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 267 (D. Minn. 1991)(noting the court's "responsibility" to assure that there is some "factual basis" for plaintiffs' claims of class-wide violations before judicial approval of the sending of notice is granted)). "[U]nsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden." Freeman, 256 F. Supp. 2d at 945; McElmurry v. US Bank National Association, No. 04-642, 2004 U.S. Dist. LEXIS 15233, at *28 (D. Or. Jul. 27, 2004) ("plaintiffs are required to show through admissible evidence a 'reasonable basis' for their claim that the employer acted on a class-wide basis"); Baum v. Shoney's, No. 98-423, 1998 U.S. Dist. LEXIS 21484, at *5 (M.D. Fla. Dec. 3, 1998) (plaintiffs must make "substantial detailed allegations of class-wide violations of the FLSA supported by affidavits").

In a similarly alleged "off-the-clock" FLSA action in this District, the court in <u>Kronick v.</u> <u>bebe Stores, Inc.</u>, No. 07-4514, 2008 U.S. Dist. LEXIS 78502 at *9 (D.N.J. Oct. 2, 2008) held that the plaintiffs failed to meet their burden of demonstrating that the "[p]laintiffs [we]re similarly situated to their prospective class such that notice to the class should [have] proceed[ed]." The court noted that the plaintiffs stated in their affidavits that they "we[re] trained to shave employees' time and that [they] we[re] not properly compensated for overtime worked." <u>Id.</u> at *7. In their affidavits, the plaintiffs further asserted that they "learn[ed] that the operations of the bebe retail stores, and the manner in which wages and compensation of store managers, acting store managers, store co-managers and sales leaders were handled, [were] substantially similar at [Defendant's] retail locations." <u>Id.</u> at *8.

However, in <u>Kronick</u>, the court found that these "general and vague" statements to be insufficient to establish a common policy among putative class members.  The court found that the affidavits were "so bereft of detail that they hardly address the critical issues required." <u>Id.</u> The court also was not swayed by one of the plaintiff's personal observations of employees shaving time and her direct knowledge that a manager was aware of the defendant's failure to pay overtime. <u>Id.</u> Ultimately, the court found that the plaintiffs' allegations did not "point to a generally applicable policy relevant to the issues in this case that would create the factual nexus required between [the plaintiffs] and the prospective class." <u>Id.</u> at *9.

Similarly, in <u>Armstrong v. Weichert Realtors</u>, No. 05-3120, 2006 U.S. Dist. LEXIS 31351 at *8 (D.N.J. May 19, 2006), the court held that the plaintiff failed to make "a modest factual showing that a class of similarly situated potential plaintiffs exists" and denied the motion for conditional certification. In reaching its decision, the court found that the lone declaration of the plaintiff contained "no factual foundation for this statement that all other loan officers were

- 14 -

required to work unpaid overtime." Id. at *4. In addition, the court recognized that, other than a conclusory allegation that "Human Resources policies mandated that loan officers not be paid overtime," there was no evidentiary support for the plaintiff's assertions of a company policy affecting putative class members. Id. at *5.

In another recent decision in this District, a court denied the plaintiff's motion for conditional certification because (a) the plaintiffs' failed to equate their claims with the putative class members and (b) the plaintiffs were unable to cite to a "uniform company policy affecting all workers adversely." Rogers v. Ocean Cable Group, Inc., No. 10-4198, 2011 U.S. Dist. LEXIS 149197 at *11-12 (D.N.J. Dec. 29, 2011). In that case, the court noted that the "plaintiffs [did] not provide[] any evidence that they ha[d] personal knowledge or otherwise observed other technicians working in excess of a 40 hour work week." Id. at *11. For that reason, the court opined that the plaintiffs were essentially asking the court "to assume that because they worked in excess of 40 hours in a workweek that the other technicians must have as well," a proposition it rejected. Id. As to the lack of an identified policy, the court, in Rogers, was not moved by the plaintiffs' unsupported allegation that the employer had a policy discouraging the plaintiffs from billing any overtime hours. Id. at *12-13.

Plaintiffs' instant Motion is riddled with the same flaws cited by the Kronick, Armstrong and Rogers courts to deny conditional certification. Indeed, Plaintiffs cannot point to a generally applicable policy of FMC that results in violations of the FLSA. The Supreme Court established the legal foundation for approving notice to potential 216(b) claimants by pointing to the benefit to the judicial system obtained through the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." Hoffman-LaRoche, 493 U.S. at 172 (notice avoids "duplicative suits"). The underlying rationale of a collective action

is judicial economy. Therefore, "[a] court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." Williams v. Accredited Home Lenders, No. 05-1681, 2006 U.S. Dist. LEXIS 50653, at *14 (N.D. Ga. July 25, 2006) (quoting England v. New Century Financial Corp., 370 F. Supp. 2d 504, 507 (M.D. La. 2005)).

Since 2010, FMC's policy with respect to underwriters' recording of work hours is clear – all hours worked must be recorded. Indeed, as confirmed by several managers and underwriters, underwriters have been consistently advised that it is FMC's policy that they record all hours worked and not to work "off-the-clock." [KJ Decl., ¶¶2, 8, and 10; PA Decl., ¶9; CL Decl., ¶9; DB Decl., ¶5]. Specifically, in their declarations, underwriters Pamela Allen ("Allen")[8] and Cyndie Lanier ("Lanier") both confirm that they were advised to record all hours worked and not to work "off-the-clock." [CL Decl., ¶9; PA Decl., ¶9]. Allen and Lanier further detail that they were advised and understood FMC's policy of requesting underwriters to work only eight hours on a daily basis and to get pre-approval for any overtime. [CL Decl., ¶10; PA Decl., ¶6]. Allen explains that, if she feels that she needs more than eight hours to complete her assignments, she contacts her supervisor, who will approve the overtime, reassign the work or tell her to finish up the next day. [PA Decl., ¶6]. Lanier asserts that her supervisor will often reach out to her (even before Lanier has sought her assistance) to ask whether Lanier would like

---

[8]     Importantly, Allen already has expressed to Dineen the fact that she has been compensated properly. [PA Decl., ¶14]. Specifically, on November 18, 2013, by way of email, Dineen contacted Allen about joining the instant action. Id. Allen questioned Dineen as to how she intended to prove she was due unpaid overtime. Id. Dineen explained how she kept documentation, including "copies of time cards, paychecks, emails sent or received asking for them to correct [sic] timecard" Id. Allen refuted ever experiencing "anything like that." Id. Dineen even tried to persuade Allen to join the instant action by bragging about getting money from her prior employer in a similar lawsuit. Id. at ¶15. Dineen's full-court press was fruitless, as Allen stood fast to her beliefs that FMC has compensated her for all hours worked. Id. at ¶16.

some help with her workload. [CL Decl., ¶4]. Both Allen and Lanier confirm that they have had

no trouble using ADP E-Time to record their work hours. [CL Decl., ¶7; PA Decl., ¶11]. They

both also state that they check the accuracy of their timecards before the end of the payroll

period (Lanier does this on a daily basis), and they have been compensated for all hours worked.

[CL Decl., ¶¶8, 10; PA Decl., ¶¶8, 12].

Dineen's experience alone is sufficient to bar Plaintiffs' request for collective action

treatment. During her employment, Dineen confirmed - on multiple occasions - that she

understood FMC's policies and did not work "off-the-clock." [DB Decl, ¶¶11, 13]. In the instant

motion, Plaintiffs ignore these fatal admissions, and present the Court with boilerplate and

"cookie cutter" declarations that they were "instructed" or "discouraged" to underreport their

work hours, while offering no detail as to whom, when and how these alleged, unsupported

instructions were conveyed.[9] [RID Decl., Exh. 1]. Because of the obvious lack of detail in

Plaintiffs' declarations, they should be disregarded, or, at the very least, they should be deemed

insufficient to establish a basis for conditional certification on their own. See Steele v. Depuy

Orthopaedics, Inc., 295 F. Supp. 2d 439, 446 (D.N.J. 2003)(discounting affidavit that contained

only "unsubstantiated conclusory statements"); Manzi v. Harman & Tyner, Inc., No. 11-60426,

2011 U.S. Dist. LEXIS 73562 (S.D. Fla. July 8, 2011)(denying motion for conditional

certification in part because identical affidavits lacked sufficient detail). As a result, Plaintiffs'

only proffer of FMC's common, plan or policy to violate the FLSA – self-serving declarations

---

[9]     Plaintiffs also incorrectly state, in their declarations, that they were paid an hourly wage.
[RID Decl., Exh. 1, ¶5]. In making such an obvious error, Plaintiffs either did not review their
declarations, or did so in a haphazard way. Indeed, Pam Allen even forwarded Dineen an email
from FMC payroll personnel explaining that FMC considered underwriters to be exempt, which
is why FMC did not "dock" Ms. Allen's pay when she took time off before she was eligible for
paid time off. [PA Decl., ¶¶4-5].

of Plaintiffs[10] – is insufficient to meet the modest factual showing required for conditional certification. See Kronick, 2008 U.S. Dist. LEXIS 78502 at *9, Armstrong, 2006 U.S. Dist. LEXIS 31351 at *4-5 and Rogers, 2011 U.S. Dist. LEXIS 149197 at *11-12. For this additional reason, Plaintiffs' motion should be denied.

**B.**   **Plaintiffs' Declarations Confirm That They Do Not Have Personal Knowledge As To Whether Other Individuals Are Entitled To Unpaid Overtime.**

Even if the Court is willing to overlook the vague, conclusory statements about Plaintiffs' alleged *individual* time keeping issues, the Court cannot overlook the fact that Plaintiffs do not offer any *actual* knowledge as to whether *other* underwriters allegedly experienced similar unpaid overtime. Rather, Plaintiffs merely state in their declarations that they "believe" that other underwriters were not paid for all of their overtime hours worked. [RID Decl., Exh. 1]. Plaintiffs' use of the term "believe" (in paragraph 10 of their Declarations) is telling. Id. Specifically, it confirms that they do not "know" the information.[11] For example, in paragraph 9 of the Declarations, Plaintiffs state, "I *know* from personal experience…." Id. Obviously, Plaintiffs were unable to declare, under penalty of perjury, that they *knew* the

---

[10]      Apart from their declarations, Plaintiffs' sole evidentiary support of their allegation that their timecards were improperly altered by their supervisors is a single, vague email. [RID Decl., Exh. 2]. However, an analysis of all the facts surrounding the email reveals that it does not actually provide any support for their claim. In the email from Douglas Harris ("Harris") to Plaintiff Linda Payne ("Payne"), he states, "I adjusted your time card as it shows 15 min of OT". Id. Noticeably, there is no reply to this email objecting to the time adjustment. Moreover, Plaintiffs' suggestion that Harris did something to violate the FLSA is belied by the actual time records. [DA Decl., Exh. D]. Indeed, the time records demonstrate that Harris did not actually reduce her *weekly* hours. As revealed by Payne's ADP E-Time Audit Report, there are only two time edits for the workweek beginning April 15, 2013: (a) on April 17, 2013, Payne's clock out time was reduced from 5:15 PM to 5:00 PM and (b) on April 19, 2013, Payne's clock out time was increased from 4:15 PM to 4:30 PM. Id. Thus, Harris's edits to Payne's timecard did not change the number of her weekly work hours. Accordingly, this lone, vague email does not provide any support for Plaintiffs' claims.

[11]      Usage of the term "believe" is also contrary to the Local Civil Rule requirement that declarations be based on personal knowledge, not speculation. L. Civ. R. 7.2(a).

existence of other underwriters not being paid for all overtime hours worked. Without actual knowledge of other underwriters not being paid properly for overtime work, Plaintiffs are asking the Court to assume such a scenario occurred, which was specifically rejected in Rogers. Rogers, 2011 U.S. Dist. LEXIS 149197 at *11. For this additional reason, Plaintiffs' motion for conditional certification should be denied.

### C.      Plaintiffs' Proffer Of Case Law Purportedly Supporting Their Motion Is Unavailing.

In support of their motion, Plaintiffs cite to four cases, which they feel are similar to the instant action and demonstrate that conditional certification is warranted. However, all of the cases cited are easily distinguishable from the instant action. With respect to the three of the cases, Aboud v. City of Wildwood, 2013 WL 2156248 (D.N.J. May 17, 2013) (did not compensate employees for rest breaks and meal breaks, which potentially were not *bona fide* meal breaks), Manning v. Goldbelt Falcon, LLC, 2010 WL 3906735 (D.N.J. Sept. 29, 2010)("had [a] … common pay policy whereby [the employer] automatically reduced the amount of hours credited to each …employee"), and Garcia v. Freedom Mortgage Corp., 2009 WL 3754070 (D.N.J. Nov. 2, 2009) (classified potentially non-exempt employees as exempt), they all involved employers with published policies that could possibly result in the employees not being paid for overtime. No such situation is presented here. As detailed above, FMC's published policies would properly compensate its underwriters for all overtime worked. [KJ Decl., ¶¶2, 8, and 10; PA Decl., ¶9; CL Decl., ¶9; DB Decl., ¶5].

As for the fourth case, Shakib v. Back Bay Rest. Group, Inc., 2011 WL 5082106 (D.N.J. Oct. 26, 2011), the lack of detail of the evidentiary support the court considered in granting conditional certification, renders Plaintiffs' reliance on that case untenable. First, the decision is unclear as to whether the claimants supported their motion with similar non-descriptive affidavits

as those presented in the instant action. Second, the decision does not reveal whether the claimant's allegations are contrary to prior admissions like those present in the instant action (*i.e.*, Dineen's multiple confirmations to her supervisor that she was not working "off-the-clock"). Third, the Shakib decision also does not describe how the employees' work hours were recorded and/or how the claimants allegedly were forced to shave their time. More importantly, the decision does not describe what evidence was presented to the court in order to demonstrate that other individuals were similarly affected by the employer's payroll/timekeeping practices. In short, other than stating the claimants alleged they were required to work "off-the-clock," the Shakib decision provides little analysis of what evidence was used to support the claimant's allegations. Accordingly, the Shakib decision is of no assistance to this Court in determining whether to grant Plaintiffs' request to conditionally certify this action.

Accordingly, none of the cases cited by Plaintiffs offer any support for their instant motion. Indeed, they either address scenarios involving published policies which would violate the FLSA, *which is not present in this action*, or they do not involve such vague and unsupported declarations as those present in the instant action. On the other hand, the cases cited by FMC – *i.e.* Kronick, Armstrong and Rogers – are far more on point with respect to how this Court should analyze a motion for conditional certification for putative "off-the-clock" FLSA violations when the claimants have only submitted vague, unsupported declarations refuting a publicized policy.

\* \* \*

In sum, because of the individualized nature of Plaintiffs' claims and by failing to establish a company-wide plan or policy to deny individuals overtime in violation of the FLSA, Plaintiffs have failed - as a matter of law - to make a sufficient showing to warrant the sending

of notice. See Bernard, 231 F. Supp. 2d at 435 (denying notice because plaintiffs failed to show that defendant had a company-wide policy resulting in potential FLSA violations); Morisky, 111 F. Supp. 2d at 497-498 (denying notice where plaintiffs failed to establish a "common scheme" to deny them overtime); see also Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983) (affirming refusal to authorize class notice where plaintiff's counsel offered only unsupported assertions that FLSA violations were widespread); D'Anna, 903 F. Supp. at 894 (denying plaintiff's motion to send notice where plaintiffs class-wide allegations were "broad and vague" and lacked "factual support" for the existence of a potential class). For this reason, Plaintiffs' motion should be denied in its entirety.

## <u>CONCLUSION</u>

For the foregoing reasons, we respectfully request that the Court deny Plaintiffs' motion in its entirety.


Respectfully submitted,

**KLUGER HEALEY, LLC**
Attorneys for Defendant


By: ____/s/ Phillip G. Ray_____
PHILLIP G. RAY

Dated:  May 5, 2014