UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LARA PEARSALL-DINEEN, individually and on behalf of all similarly situated individuals,<br><br>        Plaintiff,<br><br>     v.<br><br>FREEDOM MORTGAGE CORPORATION,<br><br>        Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 13-6836<br>       (JEI/JS)<br><br>**OPINION** |

**APPEARANCES:**

NICHOLS KASTER, PLLP
By:  Rachhana T. Srey, Esq.
     Reena I. Desai, Esq.
4600 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402

and

SCHALL & BARASCH, LLC
By:  Patricia A. Barasch, Esq.
Moorestown Office Center
110 Marter Avenue
Suite 302
Moorestown, New Jersey 08057
     Counsel for Plaintiff

KLUGER HEALEY, LLC
By:  William H. Healey, Esq.
     Phillip G. Ray, Esq.
219 Broad Street
Red Bank, New Jersey 07701
     Counsel for Defendant

1

**Irenas**, Senior District Judge:

Plaintiff Lara Pearsall-Dineen brings this proposed collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19, on behalf of a subset of current and former employees of Defendant Freedom Mortgage Corporation. Pearsall-Dineen alleges that the Defendant failed to pay its mortgage underwriter employees the overtime compensation they are entitled to, in violation of FLSA.[1]  Pending before the Court is Pearsall-Dineen's Motion for Conditional Class Certification. For the reasons set forth below, this motion will be granted.

**I.**

The Court reviews only the factual and procedural background necessary for deciding the pending motion for conditional class certification.

According to the Complaint, Defendant Freedom Mortgage Corporation ("FMC") is a mortgage lender and originator, incorporated and headquartered in New Jersey, and licensed to work in all fifty states. (Compl. ¶¶ 3-4)  In furtherance of its business, FMC employs mortgage underwriters who work both in FMC offices as well as remotely from their residences. (Id. ¶ 6)  Plaintiff Lara Pearsall-Dineen alleges that from December

---

[1] The Court exercises subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

2012 through August 2013, she was one of these mortgage underwriters who worked from home. (Id. ¶¶ 8-9) Pearsall-Dineen asserts that FMC employed mortgage underwriters like her as hourly employees, and all of whom were (and are) eligible for overtime pay under FLSA in the event that she or her colleagues worked more than forty hours in a single week. (Id. ¶¶ 13-15)

In the pending matter, Pearsall-Dineen alleges that though she and her colleagues were entitled to overtime compensation, FMC withheld such compensation. Specifically, Pearsall-Dineen contends that FMC imposed "production requirements" on mortgage underwriters that required them to work in excess of forty hours per week. (Id. ¶ 16) A failure to satisfy these requirements could lead to disciplinary action or termination. (Id.) Though Pearsall-Dineen and other mortgage underwriters were required to record their hours worked on timecards, Pearsall-Dineen asserts that the timekeeping system does not accurately reflect all of the hours she and her colleagues worked. (Id. ¶ 18) More specifically, her timecard and those of other mortgage underwriters, inaccurately reflect overtime hours because FMC instructed mortgage underwriters to underreport their time and "modified and altered" Pearsall-Dineen's timecard to remove overtime work. (Id. ¶¶ 20-22)

As a result, Pearsall-Dineen now brings a collective action against FMC, seeking recovery under FLSA for unpaid overtime

wages.  Specifically, Pearsall-Dineen seeks certification of a proposed class: "All persons who worked as mortgage underwriters (or in other positions with similar job titles or job duties) for Defendant at any time during the last three years prior to the filing of this Complaint through the entry of judgment." (Id. ¶ 11)

Pearsall-Dineen filed her Complaint on November 12, 2013. Following FMC's Answer, filed December 23, the parties held an initial conference on February 4, 2014.  In accordance with the Scheduling Order entered on February 5, Pearsall-Dineen filed this motion for conditional certification of the FLSA collective action on April 1, which is now ripe for resolution.

## II.

As a general matter, FLSA mandates that employers are required to pay overtime compensation to employees who work in excess of forty hours per week.  29 U.S.C. § 207.  The statute permits an employee who believes his or her right to overtime compensation has been violated to proceed in a collective action, "for and in behalf of himself or themselves and other employees similarly situated."  Id. § 216(b).  Despite this straightforward authorization, FLSA fails to define the term "similarly situated."  As a result, courts within the Third Circuit follow a two-step process to determine whether a FLSA

plaintiff may proceed with a collective action, or instead must pursue their claim individually. *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 724 F.3d 239, 242-43 (3d Cir. 2013); *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 535-37 (3d Cir. 2012).

The first step analysis begins when a plaintiff moves for conditional certification of a collective action. *Zanes v. Flagship Resort Dev., LLC*, No. 09-cv-3736 (JEI/JS), 2010 WL 4687814, at *2 (D.N.J. Nov. 9, 2010). This step generally "occurs early in the litigation when the court has minimal evidence." *Adami v. Cardo Windows, Inc.*, --- F.R.D. ---, 2014 WL 320048, at *7 (D.N.J., Jan. 29, 2014). The conditional certification process, despite sometimes borrowing the language of class action certification from Federal Rule of Civil Procedure 23, is not really a certification but instead is a "district court's exercise of [its] discretionary power . . . to facilitate the sending of notice to potential class members." *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 194 (3d Cir. 2011) (citation omitted), *rev'd on other grounds sub nom. Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523, 1526 (2013).

When considering the first step of conditional certification, courts apply a "fairly lenient standard" to determine whether the plaintiff has met the "modest factual showing" necessary for certification. *Zavala*, 691 F.3d at 536

n.4. Under this standard, a plaintiff "must produce some evidence beyond pure speculation of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Id.* (internal quotation marks omitted) (quoting *Symczyk*, 656 F.3d at 193). This generally requires review of both the pleadings and affidavits in support of or in opposition to the proposed collective action. *Adami*, 2014 WL 320048, at *7 (citing *Herring v. Hewitt Assoc., Inc.*, No. 06-cv-267 (GEB), 2007 WL 2121693, at *4 (D.N.J. July 24, 2007)). A showing that opt-in plaintiffs bring the same claims and seek the same form of relief has been considered sufficient for conditional certification. *Adami*, 2014 WL 320048, at *8.

Following conditional certification, a FLSA collective action proceeds to discovery. At or near the conclusion of discovery, a court (upon motion by either the plaintiff for final certification or by the defendant for decertification) proceeds to the final step for certification. *Symczyk*, 656 F.3d at 193. "It is possible for a class to be certified at stage one but fail certification at stage two." *Zanes*, 2010 WL 4687814, at *2; *see also Ruehl v. Viacom, Inc.*, 500 F.3d 375, 388 n.17 (3d Cir. 2007) ("At the [second step], after potential class members have filed their consents to opt in and after there has been further discovery to support the plaintiffs'

6

allegations, a district court may revoke conditional certification if the proposed class does not meet FLSA's 'similarly situated' requirement.").

The final certification step requires a plaintiff to establish, by a preponderance of the evidence, that the plaintiff and opt-in plaintiffs are "similarly situated." *Zavala*, 691 F.3d at 536. Courts make this evaluation on a case-by-case basis by considering all relevant factors, including but not limited to:

> [W]hether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment. Plaintiffs may also be found dissimilar based on the existence of individualized defenses. . . . This list is not exhaustive, and many relevant factors have been identified. *See* 45C AM.JUR.2D *Job Discrimination* § 2184 (listing 14 factors to be considered in determining whether proposed collective action plaintiffs are "similarly situated" under the ADEA).

*Id.* at 536-37.

In the pending matter, the parties agree that Pearsall-Dineen is appropriately seeking conditional certification under the first-step analysis. Pearsall-Dineen filed her Complaint on November 12, 2013, and filed the pending motion for conditional class certification on April 1, 2014. In the intervening period, twenty opt-in plaintiffs filed consent forms to join

Pearsall-Dineen's action, and the parties held a Rule 16 scheduling conference that resulted in a stay of discovery until this Court's determination concerning conditional certification. She seeks certification of the following proposed collective class: "All persons who worked as mortgage underwriters (or in other positions with similar job titles or job duties) for [FMC] at any time during the last three years prior to the filing of this Complaint [November 12, 2013] through the entry of judgment." (Compl. ¶ 11)  Given that the parties have not engaged in discovery sufficient to make a final determination, the Court reviews the parties' arguments under the first-stage analysis.

To demonstrate that the opt-in Plaintiffs are similarly situated at the first stage, Pearsall-Dineen provides nine affidavits, in addition to her own, concerning the job duties and specific legal claims of FMC's mortgage underwriters. These affidavits explain that each opt-in Plaintiff, in their role as a mortgage underwriter for FMC, had the same job duties and was paid an hourly wage.[2]  Each of the opt-in Plaintiffs declare that

---

[2] The sworn affidavits of each opt-in Plaintiff contain nearly identical language, and each explains that while they were employed with FMC, their "main job duty was to review and confirm approval of mortgage loans.  [They] ensured that all documentation for the loan was in place and that the loan met the relevant guidelines."  (See, e.g., Bradley Decl. ¶ 4; Carey Decl. ¶ 4; Herman Decl. ¶ 4)  In addition, each opt-in Plaintiff also declared that they were paid an hourly wage and understood that they were non-exempt employees for purposes of FLSA and therefore eligible for overtime pay.  (See, e.g., Bradley Decl. ¶ 5; Carey Decl. ¶ 5; Herman Decl. ¶ 5)  Each of

they regularly worked more than forty hours per week because of the workload imposed by their supervisors and FMC "production goals." (E.g. Malvey Decl. ¶ 6)  Despite working more than forty hours per week, the opt-in Plaintiffs declare they were deprived of "some or all" of the overtime compensation for their excess hours because they were instructed by their supervisor from reporting "some or all" of those hours. (See, e.g., Id. ¶¶ 6-8)  The opt-in Plaintiffs assert that FMC has "established policies and procedures for, among other things, loan pricing and documentation needed for loan processing." (Id. ¶ 9) Violation of these policies might subject underwriters to discipline and "could result in termination." (Id. ¶ 6)  In short, these affidavits allege that the opt-in Plaintiffs shared the same job responsibilities, were all subject to FMC policies requiring them to work in excess of forty hours per week but were not compensated for those excess hours.  The Plaintiffs have therefore put forward the modest factual showing in their affidavits that they bring the same legal claim, and combined with the assertion that they all held the same job, Pearsall-Dineen satisfies the standard for conditional certification.

    In spite of these affidavits, FMC contends that the opt-in Plaintiffs are not similarly situated to Pearsall-Dineen.  FMC

---

the ten affidavits contain the same averments regarding job responsibilities and pay.

first argues that Pearsall-Dineen's claim the mortgage underwriters worked "off-the-clock" ultimately requires individualized determinations unsuited to FLSA's collective action provision. Though FMC identifies cases where adjudication of a FLSA "off-the-clock" claim required inquiry into the direction of specific, individual supervisors and policies for FLSA plaintiffs,[3] similar concerns among Pearsall-Dineen and other opt-in mortgage underwriters at the conditional class certification stage are premature. According to the sworn affidavits of the opt-in Plaintiffs, all mortgage underwriters had the same job responsibilities and were subject to the same policies concerning their duties and workload expectations described *supra*. Furthermore, these policies and practices allegedly led directly to the "off-the-clock" work. As such, adjudication of the "off-the-clock" claim implicates similar issues and is therefore suited for collective determination, at least at the point of conditional certification.

---

[3] For example, FMC asserts that allegations that a plaintiff "worked 'off-the-clock' without compensation and that his timesheets were altered to delete overtime hours are too individualized to warrant collective action treatment." *Diaz v. Elecs. Boutique of Am., Inc.*, No. 04-cv-0840E (SR), 2005 WL 2654270, at *5 (W.D.N.Y. Oct. 17, 2005) (citing *Lawrence v. City of Phila., Pa.*, No. 03-cv-4009 (CSG), 2004 WL 945139, at *2 (E.D.Pa. Apr. 29, 2004)). In *Diaz*, the plaintiff sought conditional certification of a class of Assistant Store Managers across more than 1,400 stores nationally, including urban, suburban, and rural areas. *Diaz*, 2005 WL 2654270, at *1. Here, even in light of the fact that the opt-in Plaintiffs come from around the country, their sworn affidavits allege that they are subject to the exact same policies and practices in terms of job responsibilities and deprivation of overtime pay. As such, Pearsall-Dineen has made the modest factual showing for conditional certification.

Second, FMC contends that Pearsall-Dineen's affidavits are insufficient to demonstrate even the modest factual showing of a policy, plan, or practice in violation of FLSA.  In support of this contention, FMC argues that the opt-in Plaintiffs' affidavits fail to allege that a generally applicable FMC policy violates any provision of FLSA, and as a related contention, FMC's policies in effect since 2010 require mortgage underwriters to accurately record their time.  FMC identifies examples of affidavits in previous cases that were deemed insufficient to demonstrate a policy, plan, or practice, but such examples are distinguishable from the pending matter.[4]  As described *supra*, the affidavits filed by the opt-in Plaintiffs assert that the workload of mortgage underwriters, and policies concerning underwriter responsibilities, required them to work

---

[4] For example, a one-page affidavit lacking "a factual foundation," and omitting "information about who is in the potential class and the basis for inferring that the potential members are similarly situated," would be insufficient in support of conditional certification. *Armstrong v. Weichert Realtors*, No. 05-cv-3120, 2006 WL 1455781 (JAG), at *2 (D.N.J. May 19, 2008). Similarly, in *Kronick v. bebe Stores, Inc.*, No. 07-cv-4514 (RBK), 2008 WL 4546368, at *2-3 (D.N.J. Oct. 2, 2008), the plaintiffs' affidavits failed to explain how employees at one store location learned of allegedly unlawful practices at other store locations, ultimately resting on "pure speculation" that the Defendant's alleged policies were applicable to other employees. Here, the opt-in Plaintiffs explain their personal experience with the underwriting workload and policies, and based on their "personal knowledge, observations, and experiences," specifically identify other underwriters who had similar job roles and were allegedly also deprived of their overtime wages.  (See, e.g., Marquez Decl. ¶ 12)  Even if the Court were to discount the declaration of Cindy Kellner because she fails to specifically name other underwriters who were deprived of their overtime wage, the other nine affidavits identify other underwriters and sufficiently explain the contours of the proposed class of underwriters with the same job responsibilities allegedly deprived of overtime wages.  (See Kellner Decl. ¶ 12)

in excess of forty hours per week. In addition, underwriters were instructed by supervisors not to record time in excess of forty hours. To the extent that FMC contends that its company policy is precisely the opposite of what Pearsall-Dineen and the opt-in Plaintiffs allege -- that FMC policy requires mortgage underwriters to accurately record their time and only work more than forty hours a week with express permission -- such arguments are premature. (<u>See</u>, <u>e.g.</u> Jefferson Decl. ¶¶ 3-12) If discovery ultimately reveals that FMC has not imposed policies that violate FLSA, such information will be relevant to the second-step, final certification analysis. However, the ten affidavits submitted in support of conditional certification each uniformly allege that the workload imposed on underwriters, as well as the policies concerning their work, required them to work in excess of forty hours per week, and that supervisors instructed these underwriters not to record any hours in excess of that time. As a result, Pearsall-Dineen has provided "some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Zavala*, 691 F.3d at 536 n.4 (citation omitted). As such, the Court will grant conditional certification of Pearsall-Dineen's collective action.

**III.**

Upon conditional certification of a FLSA collective action, a court has discretion to provide court-facilitated notice to potentially eligible members of the collective action. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Such notice ensures that employees receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* The notice also "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cut off dates to expedite the disposition of the action." *Id.* at 172.

Pearsall-Dineen's proposed notice form provides a short description of the lawsuit, explains class members' right to make a claim, the effect of doing so, the relevant statute of limitations, a notice that FLSA prohibits retaliation against employees who join the action, and a consent form for employees who wish to opt into the collective action. Pearsall-Dineen proposes four conditions concerning distribution of the notice: (1) a sixty-day notice period for potential class members; (2) Pearsall-Dineen will mail the proposed notice form to the last known address of all eligible underwriters; (3) Pearsall-Dineen will email the proposed notice form to the last known personal email address of all former eligible underwriters; and (4) Pearsall-Dineen will mail a second notice to potential class

members who have not yet joined the action, halfway through the sixty-day notice period.

As stated at oral argument, FMC does not object to Pearsall-Dineen's proposed notice provisions.  However, even if FMC had objected to producing the relevant names, addresses, and email addresses of potential class members, such material may properly be discovered to facilitate notice of a FLSA collective action.[5]  *See Hoffman-La Roche*, 493 U.S. at 170.

In addition, district courts may "regulate their practice [of facilitating notice] in any manner not inconsistent with federal or local rules."  *Id.* (internal quotation mark omitted) (quoting FED.R.CIV.P. 83); *see also Garcia v. Freedom Mortg. Corp.*, No. 09-cv-2668 (JEI), 2009 WL 3754070, at *6 (D.N.J. Nov. 2, 2009).  The Court approves each of Pearsall-Dineen's notice provisions, subject to one amendment.  Pearsall-Dineen is directed to amend the final sentence of the Statute of Limitations section in order to more fully inform prospective class members of their options.  The current sentence reads: "If you choose not to join in this action, or file your own action,

---

[5] Consistent with Pearsall-Dineen's request, the Court will require FMC to provide Pearsall-Dineen's counsel with a list, in Microsoft Excel format, comprised of the individuals falling within the conditionally certified collective action class.  Specifically, FMC must provide a list of full names, last known address, last known personal email address (for former employees), employee ID number, and dates of employment.  In the event that a notice is returned as undeliverable, then Pearsall-Dineen's counsel shall notify FMC's counsel, and FMC shall have three days to provide Pearsall-Dineen's counsel with the birthdate of the putative class member.

14

some or all of your potential claims may later be barred by the statute of limitations." The amended sentence shall read: "Your decision not to join this case will not affect your right to bring a similar case on your own at a future time. However, claims under FLSA must be brought within two years of the date that the claim accrues, unless the employer's violation of the law was 'willful,' in which case the maximum statute of limitations of three years applies."

## IV.

Based on the foregoing, the Plaintiff's motion for conditional certification and notice will be granted. An appropriate Order accompanies this Opinion.


Date: 6-25-14

                                          s/ Joseph E. Irenas
                                    **Joseph E. Irenas, S.U.S.D.J.**